UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KMC REAL ESTATE INVESTORS LLC | ) | CASE NO. 11-90930-BHL-11 |
| | ) | |
| Debtor. | ) | |

**RL BB FINANCIAL, LLC'S MOTION TO DISMISS FOR LACK OF GOOD FAITH FILING OR, IN THE ALTERNATIVE, MOTION FOR ABSTENTION OR, IN THE ALTERNATIVE, MOTION FOR RELIEF FROM AUTOMATIC STAY**

RL BB Financial, LLC ("Lender"), by and through undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 1112, for an order dismissing this bankruptcy proceeding as having been filed in the absence of good faith, or, alternatively, pursuant to 11 U.S.C. § 305, for an order abstaining from hearing this case on the ground that it is merely a two-party dispute, or, alternatively, pursuant to 11 U.S.C. § 362, for an order granting Lender relief from the automatic stay to foreclose on its collateral and to exercise its other rights and remedies as a secured creditor. In support of its motion, Lender represents as follows:

**JURISDICTION**

1. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). The basis for the relief requested herein is §§ 1112, 305 and 362 of title 11 of the United States Code.

**FACTUAL BACKGROUND**

**Background**

2. On April 1, 2011 (the "Petition Date"), KMC Real Estate Investors LLC (the "Debtor" or "KMC") filed a voluntary petition for relief under Title 11, Chapter 11 of the United Code

with this Court. The Debtor filed its petition as a single asset real estate debtor as defined in 11 U.S.C. § 101 (51B). Since the Petition Date, the Debtor has been allegedly operating as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. The Debtor is an Indiana limited liability company with its principal office located at 4601 Medical Plaza Way, Clarksville, Indiana 47129. The Debtor owns certain real property located in Clark County, Indiana, commonly known as 4601 Medical Plaza Way, Clarksville, IN 47129, which is described in more detail as:

> Lot Two of Veteran's Village recorded in Instrument #200713000, Plat Book 14 at Page 79, in the Office of the Recorder of Clark County, Indiana

(the "Property"). Lender is Debtor's largest creditor. *See* Schedule D.

4. The Debtor lists relatively few other creditors on its schedules. The Debtor lists DivLend Equipment Leasing, L.L.C. as an unliquidated, disputed, unsecured nonpriority creditor in the amount of $4,196,260.98 and lists Med One Capital Funding, LLC as a disputed, unsecured nonpriority creditor in the amount of $1,492,503.38 for a lawsuit. *See* Schedule F. Each of these is an entity that leased medical equipment to Kentuckiana Medical Center, LLC ("Kentuckiana"), an entity which had leased the Property from the Debtor. Lender is not aware of the basis for such entities to have claims against the Debtor. The other creditor claims listed on the Debtor's schedules are *de minimis*.

5. The Debtor also has only $600.00 in cash on hand. *See* Schedule B.

**Loan Documents**

6. On June 21, 2007, the Debtor executed and delivered to Branch Banking and Trust Company ("BB&T") a Note (the "Note"), in the original principal sum of Twenty-One Million Five Hundred Thousand Dollars and Zero Cents ($21,500,000.00). Exhibit [1].

1907319 (23161-1)                                    2

7.  On June 21, 2007, to secure sums due under the Note, the Debtor executed and delivered to BB&T a Mortgage (the "Mortgage") on the Property.  Exhibit [2].  The Mortgage was recorded on June 22, 2007, as Instrument No. 200713139, in the Office of the Recorded of Clark County, Indiana.

8.  On June 21, 2007, to further secure sums due under the Note, the Debtor executed and delivered to BB&T an Assignment of Leases and Rents (the "Assignment of Leases").  Exhibit [3].  The Assignment of Leases was recorded on June 22, 2007, as Instrument No. 200713140, in the Office of the Recorder of Clark County, Indiana.

9.  On June 21, 2007, to further secure sums due under the Note, the Debtor executed and delivered to BB&T a Security Agreement (the "Security Agreement"), granting BB&T a security interest in the personal property of the Debtor as more particularly described in the Security Agreement, including, but not limited to:

> All hospital equipment, machinery and supplies, including without implied limitation, magnetic resonance imaging and computerized axial tomography machines, furniture, fixtures, HVAC equipment, washers, dryers, dishwashers, appliances, computer, electronic media, data, records, books of account and any other equipment and any other type of personal property located on, in or about the Property, attached to the Property or used or useful in connection with the Property.

Exhibit [4] (the "Collateral," and together with the Property, the "Mortgaged Property").

10.  BB&T perfected its lien on the Collateral by filing UCC Financing Statements (the "Financing Statements") with the Indiana Secretary of State, on June 22, 2007, as Instrument No. 200700006023000, and the Recorder of Clark County, Indiana, on June 22, 2007, as Instrument No. 5566.  Exhibit [5].

11.  The Note was assigned to Lender by an Allonge.  Exhibit [6].

12. The Mortgage was assigned to Lender by an Assignment of Security Instrument dated September 30, 2010.  Exhibit [7].  The Assignment of Security Interest was recorded January 12, 2011, as Instrument No. 201100667, in the Office of the Recorder of Clark County, Indiana.

13. The Assignment of Leases was assigned to Lender by an Assignment of Assignment of Leases and Rents dated September 20, 2010.  Exhibit [8].  The Assignment of Assignment of Leases was recorded January 12, 2011 as Instrument No. 201100668, in the Office of the Recorder of Clark County, Indiana.

14. The Security Agreement and all other documents executed in connection with the Loan Documents were assigned to Lender by an Assignment of Loan Documents dated September 30, 2010.  Exhibit [9].  (The Assignment of Security Interest, Assignment of Assignment of Leases and Assignment of Loan Documents are collectively the "Assignments" and, together with the Note, Mortgage, Assignment of Leases, Security Agreement and Financing Statement are collectively the "Loan Documents")

15. Lender is the current holder of the Loan Documents.

16. The value of Lender's claim exceeds the value of the Property.

17. As of April 1, 2011, the accrued and unpaid debt under the Loan Documents was at least $21,998,664.74.

**State Court Lawsuit**

18. The Debtor committed various acts of default, including, failing to pay its indebtedness to Lender according to the terms of the Loan Documents and failing to pay the real estate taxes on the Property as the taxes came due.

19. On February 23, 2011, Lender filed a complaint against the Debtor and various other parties in the Circuit/Superior Court for Clark County, State of Indiana, Cause No. 10D02-1102-

MF-79 (the "Complaint"). The Complaint contained three counts: Count I – Suit on Note, to Foreclose Mortgage and Security Agreement on the Mortgaged Property; Count II – Suit on Guaranties; and Count III – Appointment of a Receiver.

**Affiliated Bankruptcy Proceeding**

20. On September 19, 2010, Kentuckiana Medical Center, LLC ("Kentuckiana") filed its voluntary petition for relief under Title 11, Chapter 11 of the United Code in the United States Bankruptcy Court for the Southern District of Indiana, New Albany Division, Case No. 10-93039-BHL-11.

21. Kentuckiana is a hospital that operates at the Property. Upon information and belief, Kentuckiana and the Debtor share overlapping, but not identical, management and ownership. Several of the owners of Kentuckiana (and the Debtor) are guarantors of the loan obligations owed to Lender and have been sued on their guaranties.

22. On its bankruptcy petition, Kentuckiana listed the Debtor as one of its 20 largest unsecured creditors with a claim as of the petition date of $2,700,000.00. Kentuckiana also listed on its Schedule G that it had an unexpired hospital/real estate lease with the Debtor (the "Lease"). Pursuant to the Assignment of Assignment of Rents, as a result of Debtor's numerous defaults, all rents due and owing from Kentuckiana should be paid to Lender.

23. During the pendency of Kentuckiana's bankruptcy, Kentuckiana has not made any payments on the Lease to the Debtor and the Debtor's claim against Kentuckiana continues to grow on a monthly basis. Furthermore, the Debtor never filed a motion for assumption or rejection of the Lease in Kentuckiana's bankruptcy and, as of about January 20, 2011, the lease was deemed rejected by operation of law.

24. The bankruptcy case of Kentuckiana is floundering. Two interested parties have filed motions to convert the case to a Chapter 7. Med One Capital Funding, LLC, a secured creditor of Kentuckiana, filed its motion to convert on May 3, 2011 (ECF# 466, Case No. 10-93039-BHL-11), and the Official Committee of Unsecured Creditors filed a motion to convert the case to a Chapter 7 on May 4, 2011 (ECF# 470, Case No. 10-93039-BHL-11). Both conversion motions allege that Kentuckiana is bleeding money and has failed to demonstrate that it can put forth a viable plan for reorganization.

25. Kentuckiana's operating reports reflect that it has had negative cash flow of hundreds of thousands of dollars a month, even while not paying the lease obligations for the Property.

## MEMORANDUM OF LAW

### I.     Dismissal Due to Lack of Good Faith Filing

26. Pursuant to 11 U.S.C. § 1112, a court may dismiss a Chapter 11 case for cause. While a court has discretion under § 1112(b), *see In re Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994); *AMC Mortgage Co., Inc. v. Tennessee Dept. of Revenue* (*In re AMC Mortgage Co., Inc.*), 213 F.3d 917, 920 (6th Cir. 2000), the statute provides that, upon the request of a party in interest, the court **shall** convert or dismiss a case, "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate … if the movant establishes cause." 11 U.S.C. § 1112(b)(1).

27. Section 1112(b) lists at least nine examples of cause, but the list is not exclusive. *See* 11 U.S.C. § 1112(b)(4). Courts have determined that the lack of good faith in filing a bankruptcy petition constitutes cause. *See In re Madison Hotel Assocs.*, 749 F.2d 410, 426 (7th Cir. 1984) (The bankruptcy code has an implicit requirement that a Chapter 11 proceeding be filed in "good faith"; therefore, a lack of good faith is cause for dismissal under § 1112(b)); *see also In re*

*Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988) (Chapter 11 case may be dismissed if it was filed in bad faith). Precisely what is bad faith is left to the courts to determine; however, the court's inquiry should focus on certain objective factors. *See In re Schlangen*, 91 B.R. 834, 837 (Bankr. N.D. Ill. 1988).

28. Where the Chapter 11 debtor has only one significant asset secured by one main creditor, the "good faith" determination focuses upon whether the filing of the Chapter 11 is "consistent with the aims and objectives of bankruptcy philosophy." *In re Castleton Assocs. Ltd. P'ship*, 109 B.R. 347, 350 (Bankr. S.D. Ind. 1989). Central to the aims and objectives of bankruptcy philosophy is whether the debtor has an ongoing business which it intends to reorganize. *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985). "Resort to the protection of the bankruptcy laws is not proper … [where] there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1073 (5th Cir. 1986).

29. A lack of good faith exists: (a) where the purpose of the Chapter 11 proceeding is to provide a "soft landing" for the Debtor's investors "who now face the reality that their investment has gone sour," rather than to save employees' jobs, *see In re Castleton Assocs. Ltd. P'ship*, 109 B.R. at 350; (b) when debtor has few unsecured creditors, none of which are significant, and one valuable asset on the upswing after bottoming out in value secured by its one major creditor, *see id.* at 351; (c) when the purpose of a Chapter 11 debtor is to hold a single asset 'hostage' in order to speculate that such asset may increase in value leading to recovery of the original investment at the creditor's risk, *Carolin Corp. v. Miller*, 886 F.2d 693, 705 (4th Cir. 1989); (d) where the bankruptcy case is essentially a two-party dispute, *see In re Local Union Int'l Brotherhood of Teamsters*, 414 B.R. 443, 448-49 (Bankr. N.D. Ill. 2009) (finding that

Chapter 11 case was filed in bad faith where, among other things, the case was essentially a two party dispute and granting motion to dismiss); *Stingfree Techs. Co. v. Fonika Ventures, LLC* (*In re Stingfree Techs. Co.*), 427 B.R. 337, 352 (E.D. Penn. 2010); and (e) where the debtor lacks the ability to propose an economically feasible plan of reorganization, *see In re Strug-Division, LLC*, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007). "In other words, the question is whether the case and possible plan serve a valid reorganizational purpose. If not, then the case was filed only to harass and delay creditors, and therefore was filed in bad faith." *Id.*

30. The debtor bears the burden of establishing that a case was filed in good faith. *See In re Strug-Division, LLC*, 375 B.R. at 448; *In re SGL Carbon Corp.*, 200 F.3d 154, 162 n. 10 (3d Cir. 1999). The Debtor cannot meet that burden based on the present facts.

31. An objective review of the foregoing factors demonstrates that this case was filed with a lack of good faith:

- First, the Debtor is a single asset entity, whose sole asset is the Property. The primary income of the Debtor is rental income from its tenant Kentuckiana; however, Kentuckiana had failed to make payments before filing for bankruptcy, and has not made any payments since filing in September 2010. As a result of Kentuckiana's bankruptcy and the lack of progress in formulating an exit strategy, future prospects of payment remain bleak.

- Second, upon information and belief, the Debtor has no employees. It shares the same management as Kentuckiana and the members of management also personally guaranteed the Note.

- Third, because the Debtor has no income, the Debtor is incapable of servicing Lender's debt. Furthermore, the lack of income makes any reorganization plan unfeasible.

- Fourth, and possibly most importantly, the sole purpose of the Debtor's filing of the bankruptcy petition was to stay Lender's state court lawsuit and avoid foreclosure and the appointment of a receiver over the Property. The Debtor does not seek to reorganize and only wants to delay and hinder Lender's collection efforts.

- Fifth, the Debtor's primary and only significant debt is the secured debt and deficiency owed to Lender. The Debtor has few unsecured creditors and those claims pale in comparison to the claims of Lender.

- Lastly, no reorganization is reasonably in prospect because the Debtor will not be able to propose a confirmable plan. *See In re Strug-Division, LLC*, 375 B.R. at 449 (stating that "the question is whether the case and possible plan serve a valid reorganizational purpose. If not, then the case was only filed to harass and delay creditors, and therefore was filed in bad faith."). The Debtor has no ongoing business operations and there is nothing to reorganize. Additionally, as a result of Lender's position as the largest secured and unsecured creditor, the Debtor will not be able to confirm a plan over Lender's objection. The Debtor is aware of its doomed reorganization fate and only filed this bankruptcy to harass and delay Lender in exercising its contracted for rights.

32. Courts have previously observed that dismissal is the appropriate remedy whenever one knowingly stop the wheels of justice for no good cause and who further add to the burdens of an overburdened system. *In re Terra of Am. Trading, Inc.*, 109 B.R. 51 (Bankr. S.D. Fla. 1989).

1907319 (23161-1)                              9

The Debtor has no valid reason for staying in this bankruptcy, and the fact that no reorganization will be possible only burdens this Court. Dismissal is the most appropriate remedy in this instance.

## II.   Alternatively, This Court Should Abstain from Hearing this Case

33.   11 U.S.C. § 305(a)(1) provides in pertinent part that the Court may dismiss a bankruptcy case or suspend all proceedings in a bankruptcy case, at any time, if the interests of creditors and the debtor would be better served by such dismissal or suspension. The doctrine of abstention is based on "considerations of proper constitutional adjudication and regard for federal-state relations." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1983). Section 305 emanates from Justice Black's opinion in *Thompson v. Magnolia*, 309 U.S. 478, 60 S. Ct. 628 (1940), that the proper exercise of a bankruptcy court's exclusive jurisdiction over a debtor

> … may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration.

309 U.S. at 483, 60 S. Ct. 630.

34.   The doctrine is appropriately invoked in a "case where the same rights and interests are the subject of a concurrent proceeding attempting to accommodate the same body of creditors holding the same claims." *In re Martin-Trigona*, 35 B.R. 596, 600 (Bankr. S.D.N.Y. 1983); *Matter of Condominium Ass'n of Plaza Towers South*, 43 B.R. 18 (Bankr. S.D. Fla. 1984)

35.   This case was filed for the sole purpose of delaying Lender's state court foreclosure lawsuit and request for appointment of a receiver. Indeed, the Debtor has no source of funds to

fund any reorganization plan or make payments to Lender. The Debtor last made an interest payment on its indebtedness to Lender on approximately December 21, 2009. This is a typical two-party dispute that can be resolved in the state court and this Court should abstain from hearing this proceeding.

### III. Alternatively, the Court Should Terminate the Automatic Stay Under 11 U.S.C. § 362(d)

36. Under Section 362(d), a bankruptcy court shall grant relief from the automatic stay under two separate conditions: (1) for cause, including the lack of adequate protection of an interest in property of a party in interest, **or** (2) with respect to a stay of an act against property, if the debtor does not have any equity in such property (*i.e.*, the creditor is undersecured) and the property is not necessary for an effective reorganization. *United Sav. Assoc. v. Timbers of Inwood Forest*, 484 U.S. 365 (1988). If either of these conditions is met, then stay relief is mandatory. Although not necessary for relief, both of these grounds are met in this case.

    **(a)**    **11 U.S.C. § 362(d)(1)**

37. As demonstrated above, the filing of this petition lacks good faith. If the Court declines to dismiss this case for cause, it may terminate the automatic stay for cause pursuant to § 362(d)(1) if the petition was filed in bad faith. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d at 1394; *see also In re Schmitt Farm P'ship*, 161 B.R. 429 (N.D. Ill. 1993) (bankruptcy stay lifted to allow mortgagee to continue with state foreclosure action as a result of debtor's lack of good faith filing).

38. Additionally, lack of adequate protection constitutes cause warranting relief from the automatic stay. *See* 11 U.S.C. § 362(d)(1); *Timbers*, 484 U.S. at 369-70. Lender's interest in the

Property is not adequately protected. The debt due and owing to Lender as of the Petition Date was approximately $21,998,664.74 and this exceeds the value of the Property. The Debtor has failed to make any payments to Lender since approximately December 21, 2009 and the Debtor has not made any postpetition payments to Lender. The amount due and owing to lender continues to increase, thus Lender's secured interest in the Property continues to decrease postpetition.

39. Lender lacks adequate protection in the Property, and Debtor's inability to make any adequate protection payments to Lender constitutes "cause" for relief from the automatic stay.

### (b)   11 U.S.C. § 362(d)(2)

40. Grounds also exist for granting Lender relief from the automatic stay pursuant to § 362(d)(2). Section 362(d)(2) provides that a court may grant relief from the automatic stay if "the debtor does not have any equity in [the collateral] and [the collateral] is not necessary to an effective reorganization." *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363 (5th Cir. 1987), *aff'd on other grounds*, 484 U.S. 365 (1988). The Debtor has no equity in the Property. Lender's lien fully encumbers the Property and the value of the Property is insufficient to cover the amount of Lender's lien.

41. Additionally, the Property is not necessary to an effective reorganization. Because of the aforementioned reasons, no reorganization of the Debtor is in prospect. No justifiable reason exists as to why Lender should not be granted relief from the automatic stay to immediately proceed with all rights and remedies to satisfy its secured claim, including proceeding with the state court foreclosure lawsuit against the Property and appointment of receiver that was commenced prior to the Petition Date.

## CONCLUSION

**WHEREFORE**, Lender requests that the Court enter an order: (1) dismissing this proceeding pursuant to 11 U.S.C. § 1112 as having been filed not in good faith, or; (2) alternatively, abstaining from hearing this proceeding pursuant to 28 U.S.C. § 305, or; (3) alternatively, granting Lender relief from the automatic stay, pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2), to foreclose on the Property and to exercise each and every one of its other rights and remedies under the Loan Documents; and (4) granting such other and further relief as this Court deems just and appropriate.

Dated:  May 6, 2011

                                            Respectfully submitted,

                                            /s/  James P. Moloy
                                            James P. Moloy (Ind. #10301-49)
                                            BOSE MCKINNEY & EVANS LLP
                                            111 Monument Circle, Suite 2700
                                            Indianapolis, Indiana  46204
                                            (317) 684-5000
                                            (317) 684-5173 (FAX)
                                            jmoloy@boselaw.com

                                            David L. Rosendorf (Fla. #996823)
                                            KOZYAK TROPIN & THROCKMORTON, P.A.
                                            2525 Ponce de Leon, 9th Floor
                                            Miami, Florida  33134
                                            (305) 372-1800
                                            drosendorf@kttlaw.com

                                            *Attorneys for RL BB Financial, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

David M. Cantor
cantor@derbycitylaw.com
belliott@derbycitylaw.com;
bates@derbycitylaw.com
neukomm@derbycitylaw.com
cebe@derbycitylaw.com
yeager@derbycitylaw.com
mcghee@derbycitylaw.com

Courtney Elaine Chilcote
cchilcote@hklawfirm.com
swatson@hklawfirm.com

Laura A DuVall
Laura.Duvall@usdoj.gov

Michael D. Hicks
mhicks@mhba.com

Jeffrey A. Hokanson
jhokanson@hklawfirm.com
jwellner@hklawfirm.com

Gary Lynn Hostetler
ghostetler@hklawfirm.com
dloyal@hklawfirm.com

M. Andrew Stewart
astewart@mhba.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

I further certify that on the 6th day of May, 2011, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid, and properly addressed to the following:

> KMC Real Estate Investors LLC
> 4601 Medical Plaza Way
> Clarksville, IN 47129

/s/  *James P. Moloy*
James P. Moloy